CICARDI BROS. FRUIT and PRODUCE COMPANY,
   Appellant, v. PENNSYLVANIA COMPANY, Re-
   spondent.

St. Louis Court of Appeals.  Opinion Filed February 6, 1923.

**CARRIERS:** Carriers of Freight: Negligence: Reconsignment Orders:
   Possession of Shipment: Evidence: Failure of Proof.  In a suit for
   damages resulting from the alleged failure of defendant through
   its agents, to exercise reasonable and ordinary care to bring
   about a diversion and reconsignment of three carloads of potatoes,
   in that, instead of telegraphing or telephoning the reconsignment
   orders, such orders were sent by mail, thereby causing delay, re-
   sulting in the potatoes reaching a lower market, *held* that there
   was no substantial evidence that the cars in question were in the
   hands of defendant at the time the reconsignment orders were
   given, or any testimony from which by any reasonable inference
   it could be held that such was the case.

Appeal from the Circuit Court of the City of St. Louis.
   —*Hon. J. Hugo Grimm,* Judge.

AFFIRMED.

   *Frank A. Thompson* for appellant.

   (1)  The railroad company made a charge of $3
upon each car as a diverting or reconsigning charge. It
was the duty of the defendant and its agents to exer-
cise reasonable and ordinary care to bring about re-
consignment of the cars involved in this case. If it,
or its agents, failed to exercise reasonable and ordinary
care to divert or reconsign the cars, it was guilty of
negligence, and evidence of the usual and customary
manner of diverting or reconsigning cars of produce
was proper, all of which is distinctly held in the former
appeal of this case.  Cicardi Bros. Fruit and Produce
Company v. Pennsylvania Company, 201 Mo. App. 609,
213 S. W. 531.  (2)  There was never any contention

made by defendant that the three cars of potatoes were not in the Pittsburgh Produce Yards at Pittsburgh, Pennsylvania on July 11, 1914. The cross-examination of the witnesses on the part of the defendant concedes this to be true. Defendant's only contention was that the Vandalia office was not told by the plaintiff that the cars were in the Pittsburgh Produce Yards when the plaintiff knew it and the Vandalia agents (as claimed by them, but denied by plaintiff) did not know it. This theory is gleaned from the cross-examination of Miss Hanson. (3) The waybills show that the cars were taken from the Pittsburgh Produce Yards to Chicago on a billing of the Pennsylvania Company. The cars were in the Pittsburgh Produce Yards on July 11, 1914. The inference, of course, is then that they were in the possession of the Pennsylvania Company, as the evidence is that the waybill is issued by the railroad company on which the car originates. So that if the shipment from Pittsburgh to Chicago originated in the Pittsburgh Produce Yards the inference to be drawn from the testimony is very strong that while the potatoes were in the Pittsburgh Produce Yards on July 13, 1914, they were in the possession of the Pennsylvania Company and, of course, there is further direct evidence that they were on this date in the possession of the Pennsylvania Company at Pittsburgh. (4) It is elementary that if there is even the slightest evidence, and whether it be direct or inferential, it is erroneous to give the peremptory instruction. Hughes v. Ellison, 5 Mo. 110; Morton v. Reeds, 6 Mo. 64; Hays v. Bell, 16 Mo. 496; Taylor v. Short, 38 App. 21; Chamberlain v. Smith, 1 Mo. 481; Speed v. Herrin, 4 Mo. 356. (5) It is the duty of a railroad company, having goods in its possession, to divert or reconsign them in accordance with the instructions of the rightful owner thereof. 10 Corpus Juris, 84; Lord and Bushnell Co. v. Railroad, 155 Mo. App. 175; Carder v. Railroad, 170 Mo. App. 698.

*Fordyce, Holliday & White* for respondent.

(1) The Pennsylvania Company owed the plaintiff no duty to reconsign or divert on July 11, 1914, because the cars on that date were not in the possession of defendant. Bosworth v. Railway Company, 87 Fed. 72; Texas & Pacific Ry. Co. v. Reiss, 183 U. S. 621; Otrick v. Ry. Co., 154 Mo. App. 420, 432; So. Ry. Co. v. Renes, 192 Ala. 620; Palmer v. Railroad Co., 56 Conn. 137; Railroad Co. v. Washburn, 22 Ohio State 324; Mo. Pac. Railroad v. McFadden, 154 U. S. 155. (2) Where an arrangement is made between several connecting carriers by which goods to be carried over the entire route are to be delivered by each carrier to the next succeeding carrier, each carrier to pay the preceding carrier the amount of its charges, and the last one to collect the whole amount from the consignee, the receiving of the goods by the last carrier and the payment of the entire charge by the consignee will not render the last carrier liable for any injury done to the goods before they are received by it. Gass v. Railroad Co., 99 Mass. 220; Darling v. Railroad Co., 11 Allen (Mass.) 295; Miller v. Railroad Co., 83 Texas 518. (3) Plaintiff is not entitled to recover for the reason that its original petition sounded in contract and the present petition sounds in tort. Cicardi Bros. Fruit & Produce Co. v. Pennsylvania Co., 201 Mo. App. 609; Ingwerson v. Railroad Co., 205 Mo. 328, and on subsequent appeal, 150 Mo. App. 374; Drake v. St. L. & S. F. R. Co., 35 Mo. App. 553; Wernick v. St. L. & S. F. R. Co., 131 Mo. App. 37. (4) Plaintiff could not recover on any special contract, and the amended petition which converted it into an action *in tort* was equivalent to the bringing of the new action more than five years after the cause of action arose, and the Statute of Limitations being pleaded, the court was in duty bound to sustain defendant's demurrer. Cicardi Bros. Fruit & Produce Co. v. Pennsylvania Co., 201 Mo. App. 609; Section 1317, R. S. 1919.

BECKER, J.:—This is a suit for damages resulting from the alleged failure on the part of the defendant company, through its agents, "to exercise reasonable and ordinary care" to bring about a diversion and reconsignment of three carloads of potatoes.

At the close of plaintiff's case, the court indicating that it would give a peremptory instruction to the jury to find for defendant, plaintiff took an involuntary nonsuit. Plaintiff's motion to set aside said involuntary nonsuit and to grant plaintiff a new trial was in due course overruled and plaintiff appeals.

This is the second appeal of this case. Our opinion on the first appeals is reported in 201 Mo. App. 609, 213 S. W. 531, and resulted in a reversing of the judgment and remanding of the cause to the trial court for such further proceedings as were not inconsistent with said opinion. Plaintiff, before trying the case again, filed its second amended petition. The substance of plaintiff's cause of action as set out in its second amended petition is as follows:

The petition alleges that the Vandalia Railroad Company is a common carrier of merchandise and a connection of the defendant, and that the said Vandalia, together with defendant and various other connecting common carriers form a system known as the Pennsylvania System, and that the said Vandalia Company in the city of St. Louis is the agent of and acts as the agent for the defendant "for the purpose of receiving reconsigning orders or shipping orders *with reference to any merchandise in the possession of the defendant for shipment by said defendant.*"

"Plaintiff states that on or about July 11, 1914, *the defendant had in its possession at Pittsburgh, Pennsylvania* holding for diverting or reconsigning orders, three carloads of potatoes, plaintiff's property . . ."

The petition then alleges that on the morning of July 11th, it gave the said Vandalia Railroad Company at St. Louis orders to divert or reconsign the said three

carloads of potatoes to F. E. Baldwin & Company at Chicago, Illinois; that the Vandalia Company, acting as agent for the defendant, accepted said diverting and reconsigning orders and agreed that it would immediately divert or reconsign said cars by wire.

It is further alleged that for a long time prior to July, 1914, plaintiff had frequently given similar orders to the said Vandalia Company, acting as agent for the defendant, *"for cars of potatoes in the possession of the defendant company held for reconsignment* at Pittsburgh and various other places;" that it had been the custom of the Vandalia Company, as such agent, to immediately bring about the diversion or reconsignment by use of the telegraph or telephone, and that in the exercise of ordinary care the Vandalia Company, in the present instance, would have caused the diversion of the said cars of potatoes by telegraphing or telephoning said orders to the defendant at Pittsburgh, but that the said Vandalia Company, as agent of the defendant, failed to exercise reasonable care in diverting or reconsigning the said cars of potatoes in that instead of telegraphing or telephoning the orders to the defendant company at Pittsburgh on Saturday, July 11, 1914, it sent such orders by mail.

The petition then alleges that had the defendant diverted and reconsigned the cars by telegraphing or telephoning the orders on July 11, 1914, instead of mailing such orders to Pittsburgh, the said cars of potatoes would have arrived in Chicago, Illinois on Monday, July 13, 1914, but because of this alleged negligence of the defendant the cars were not diverted out of Pittsburgh until July 14, 1914, and did not arrive in Chicago until July 17, 1914, and that the market in Chicago on the 17th day of July, 1914 was much lower than it was on the 13th day of July, 1914, whereby plaintiff alleges it was damaged in the sum of $1252, for which it prays judgment.

211 M. A.—38

In light of the disposition we are making of the case it is not necesary to note the answer or the reply thereto.

On the trial of the case plaintiff introduced testimony tending to prove that the three carloads of potatoes in question were shipped by the Eastern Shore Produce Exchange from Cape Charles, Virginia to Pittsburgh, Pennsylvania, over the lines of the New York, Philadelphia & Norfolk Railroad Company. The bills-of-lading read to "Shippers Orders" with instructions to notify Cicardi Bros. Fruit & Produce Company at St. Louis, Missouri. The bills-of-lading with sight draft attached were mailed to a bank in St. Louis. The plaintiff in due course took up the draft and obtained the bills-of-lading on the morning of Saturday, July 11, 1914. And during the course of the forenoon on the same day plaintiff telephoned to the office of the Vandalia in St. Louis requesting them to divert and reconsign the said three cars of potatoes from Pittsburgh to Chicago to F. E. Baldwin & Company. Later on in the forenoon of the same day, after the bills-of-lading had been sent to the Vandalia, an employee of the plaintiff company called up the Vandalia and talked to their Mr. Bullo regarding the diverting and reconsigning of the cars, and according to said employee of plaintiff, Mr. Bullo agreed to send the orders to divert and reconsign the cars by wire.

There is abundant testimony that on Saturday, July 11, 1914, the cars in question were in the Pittsburgh Produce Yards at Pittsburgh, Pennsylvania, and that during that day the plaintiff received a telegram from George Rush who was in charge of the said Produce Yards, asking plaintiff to wire instructions as to what disposition it wished to make of the cars. Plaintiff failed to answer this wire from Rush in that it had already given the diverting orders for the cars to the Vandalia office in St. Louis, but plaintiff did not, however, notify the Vandalia office that it had received the telegram from Rush ask-

ing it to wire instructions as to the disposition of the cars.

On Monday, July 13, 1914, Rush sent plaintiff another telegram requesting an answer by wire to his telegram of the 11th, and in this telegram Rush stated that track, storage and car demurrage were accruing upon the cars. Plaintiff answered this wire stating that it had notified the agent in St. Louis on Saturday to bill the cars to Baldwin at Chicago.

It further appears that the cars left Pittsburgh the day after plaintiff had sent its wire to Rush, and that the cars arrived in Chicago on July 17th.

Plaintiff also adduced testimony tending to prove that the Vandalia had on numerous occasions accepted orders to divert cars for the plaintiff at Pittsburgh and other points and that orders for diverting and reconsigning had invariably been handled by the Vandalia by wire and not by mail, but that on this occasion, however, though Mr. Bullo of the Vandalia said he would wire the diverting orders on Saturday, he sent the diverting orders by mail.

There is some testimony to the effect that the defendant company has a train leaving Pittsburgh daily in the afternoon which arrives in Chicago the second morning thereafter. The conversation between plaintiff's employee and Mr. Bullo of the Vandalia took place between eleven and eleven-thirty o'clock Saturday morning, which was twelve or twelve-thirty o'clock at Pittsburgh. There is further testimony that the market price of potatoes of the kind in question in Chicago was much higher on Monday, July 13, 1914, than it was on Friday, July 17, 1914.

As we have stated at the outset, at the conclusion of plaintiff's case plaintiff took an involuntary nonsuit and from the action of the court in refusing to set same aside plaintiff appeals.

From plaintiff's petition as well as the evidence adduced on behalf of plaintiff in support thereof on the

trial of the cause, and the assignments of error urged here on appeal, and the argument in support thereof, it appears that it is practically conceded that unless plaintiff had adduced testimony tending to prove that the three carloads of potatoes were in the possession of the defendant, Pennsylvania Company, on July 11, 1914, plaintiff has failed to make out a case for the jury and the action of the trial court in sustaining the demurrer offered by defendant at the close of plaintiff's case was well ruled.

Appellant contends in its argument that the trial court "entirely overlooked the proposition of law that in passing upon the demurrer to the evidence the plaintiff is entitled to all reasonable inferences that can be drawn from the evidence. As we understand it, the court gave the peremptory instruction because it determined that there was no evidence that the three cars of potatoes involved in the case were in Pittsburgh, July 11, 1914, and that there was no evidence that while there at that time they were in the possession of the Pennsylvania Company, the defendant in this case. We say that there was positive direct evidence of these facts in the testimony, and that there is abundant evidence from which the inference can be drawn that the potatoes were in Pittsburgh in the hands of the Pennsylvania Company on July 11, 1914.''

We readily agree with counsel for appellant that there is abundant testimony to the effect that the three cars of potatoes were in fact in Pittsburgh on July 11, 1914, but a careful consideration of the entire records has brought us to the conclusion that there is no substantial evidence that the cars in question were in the hands of the defendant, Pennsylvania Company, on said July 11, 1914; or any testimony from which, by any reasonable inference it can be held that such was the case.

In reaching this conclusion we have not overlooked the fact that in the testimony of plaintiff's witness, J.

E. Stewart, in his redirect examination we find the following questions and answers:

"Q. Do you know who Mr. George Rush is? A. Yes."

"Q. Who is he? A. Agent of the Pennsylvania Company, Pittsburgh."

"Q. What Yard? A. Pittsburgh Produce Yards."

In our view, however, the entire probative value of the testimony quoted is lost by reason of the following questions and answers which we quote from Stewart's cross-examination:

"Q. Did you ever have any talk with Mr. Rush? A. No."

"Q. Ever write to him? A. No."

"Q. All you know about what position he holds is just guessing? A. And from his telegrams that he sends."

"Q. That's all you know about it? A. Yes."

"Q. You don't know whether he is the Pennsylvania Railroad Company man, or the Pennsylvania Company man, do you? A. He is the agent in charge of the Pittsburgh Produce Yards. He must be the agent of the Pennsylvania Company."

"Q. You think the Pennsylvania Company owns those yards? A. Well, they control them, anyway."

"Q. You don't know? A. No."

"Q. You don't know whether the Pennsylvania Company owns them, or the Pennsylvania Railroad owns them? A. No."

"Q. You would not attempt to swear to it one way or the other? A. No."

Nor have we overlooked the fact that Dora Hansen, a witness for plaintiff, in her direct examination, stated that on July 11th, the three cars of potatoes were at Pittsburgh and were held there for diversion orders or reconsignment orders, and that she was then questioned as follows:

"Q. In what company? A. Pennsylvania Company."

"Q. They were being held by that company you say, at Pittsburgh for diversion or reconsignment orders? A. Yes, sir."

To show the lack of any probative value in the testimony on the question of the possession of these cars on July 11, 1914, by defendant, Pennsylvania Company, it is sufficient to quote the following questions and answers from the cross-examination of said witness:

"Q. Do you make any distinction between the Pennsylvania Company and the Pennsylvania Railroad Company? A. No."

"Q. You don't know which runs into Pittsburgh, do you? A. No."

"Q. You don't know which runs into Chicago? A. No."

"Q. So you don't know whether you gave these instructions to the Pennsylvania Company or the Pennsylvania Railroad Company? A. I gave them to the representative, the same gentleman who solicits freight, Mr. Bullo."

"Q. Did you give them to the Pennsylvania Company or the Pennsylvania Railroad Company? A. I don't know. I gave it to the representative of the Vandalia."

"Q. Do you know which railroad was holding these potatoes at Pittsburgh? A. I don't remember."

"Q. You know they are two different railroad companies, don't you? A. We never told them what railroad company had them; just gave them the orders."

"Q. Oh, you don't tell them what railroad? A. I don't remember whether we did or not."

"Q. You know there is a Pennsylvania Railroad Company and a Pennsylvania Company, don't you? A. No, I do not."

"Q. You do not? A. No, I don't know."

Plaintiff's evidence, when viewed in the light most favorable to it and allowing all reasonable inferences that could be drawn therefrom, is not only not suscep-

tible to the inference that the cars were in the possession of defendant company on July 11, 1914, but in fact the only reasonable inference that plaintiff's evidence is susceptible of is to the contrary.

It is conceded that the carriage of these three carloads of potatoes started at Cape Charles, in the State of Virginia, being shipped by the Eastern Shore Produce Exchange over the lines of the New York, Philadelphia & Norfolk Railroad Company, with Pittsburgh, Pennsylvania as their destination. The bills-of-lading read to "Shippers Order" with directions to notify Cicardi Bros. Fruit & Produce Company at St. Louis, Missouri.

On Friday, July 10, 1914, plaintiff company knew that the three cars had arrived in Pittsburgh. On Saturday, July 11, 1914, it received a wire from George Rush, manager in charge of the Pittsburgh Produce Yards at Pittsburgh, Pennsylvania, announcing that the three cars were in Pittsburgh at that time and asking plaintiff to wire him what disposition it wanted to make of the cars. This wire plaintiff did not answer because it had on that same day given reconsigning and diverting orders for the cars to the Vandalia office in St. Louis. Plaintiff did not however notify the Vandalia office of the receipt of Rush's wire. Again on Monday, July 13, 1914, plaintiff received a wire from Rush reading as follows: "Answer mine 11th regarding three cars of potatoes consigned Eastern Shore Produce Exchange and notify you. Track, storage and car demurrage accruing." To this telegram plaintiff wired: "Notified agent here Saturday to bill cars to F. E. Baldwin & Company, Chicago."

Remembering that the original bills-of-lading required the initial carrier to notify Cicardi Bros. Fruit & Produce Company as part of its contract of carriage with the original shipper, and that the only notification so far as this record shows which the plaintiff received was the telegrams from Rush, it seems to us that the only

reasonable inference which can be drawn is that such notice was given in compliance with the original contract of carriage, in which case Rush was the agent for the initial carrier.

Again, there is nothing in the record to show that the initial carrier had any information whatsoever on July 11, 1914, that the cars in question were going to be diverted to Chicago, consequently, absent such information on the part of the initial carrier, could the initial carrier have turned over the cars in question to the defendant company for the purpose of diverting same to Chicago? Rush's telegram clearly indicated that even up until Monday, July 13th, he had no information as to what plaintiff wanted done with the cars then held by him at Pittsburgh.

Furthermore there is other evidence adduced by the plaintiff, an examination of which is out of harmony with the inference that the appellant is here seeking to have us draw from the record in this case. Plaintiff introduced the way-bills of the defendant company for the freight charges from Pittsburgh to Chicago, together with the advances paid by the defendant company. An examination of one of these way-bills discloses that only the freight charges from Pittsburgh to Chicago were billed as directly due the defendant company, but under the items billed as advances we find set out in the way-bill freight charges paid by the defendant company to the initial carrier for the haul from Cape Charles, Virginia, to Pittsburgh, Pennsylvania, and in addition a three dollar item paid out by defendant for reconsigning or diverting of the cars at Pittsburgh; and the further charge of two dollars paid out for storage, and also one dollar paid for car service. These last three items are set out in the way-bill under the column of advances paid by the defendant company, which is inconsistent with the inference that the defendant company had possession of the cars on July 11th. Had that been true the reconsigning charge as well as

the charge for storage and car service would have been a charge by the defendant company direct to the plaintiff and not billed as paid out by them and charged as an advance payments as appears upon the way-bill.

In light of our conclusion that plaintiff has failed to adduce any evidence that the cars in question were in, the possession of the defendant company on July 11, 1914, the action of the learned trial court in sustaining defendant's demurrer offered at the close of plaintiff's case was well ruled. It follows that the judgment should be and the same is hereby ordered affirmed.

*Allen, P. J.,* and *Daues, J.,* concur.